# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JAMES B. FULLERTON and
BARBARA A. FULLERTON,

      Plaintiffs,

v.                                                                       No: 1:19-cv-00346-RB-KRS

ENERGEN RESOURCES CORPORATION,

      Defendant.

## MEMORANDUM OPINION AND ORDER

The saga of Defendant Energen Resources Corporation (Energen) and its alleged royalty underpayments continues—this time in an individual lawsuit.[1] Plaintiffs James B. Fullerton and Barbara A. Fullerton (the Fullertons) sued Energen for violating lease and royalty agreements dating back to 1989. Energen moves to dismiss Plaintiffs' claims and argues that they missed their opportunity to recover because the six-year statute of limitations has run. The Fullertons contend, however, that these claims are tolled by a related class action lawsuit filed in 2013 under the doctrine espoused in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). Considering that the claims filed in this matter are nearly identical to those filed in the 2013 class action, *American Pipe* tolling applies. Therefore, the Court will deny Energen's Motion to Dismiss.

## I. Background

### a. Oil and Gas Lease and Overriding Royalty Agreements

In July 1989, the Fullertons "entered into an Oil and Gas Lease with T.H. McElvain Jr., as Lessee," for property in San Juan County, New Mexico. (Doc. 1 (Compl.) ¶¶ 7–8.) The lease provision reads: "In consideration of the premises the said Lessee covenants and agrees . . . to pay

---

[1] Other cases include *Ulibarri v. Energen Resources Corp.* (1:18-cv-00294-RB-SCY) and the related case *Ulibarri v. Southland Royalty Co. LLC* (1:16-cv-00215-RB-JHR).

Lessor one fifth (1/5) of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found." (*Id.* ¶ 9.) It states that "[t]here shall be no deduction from the value of Lessor's royalty by reason of any required processing, cost of dehydration, compression, transportation, or other matter associated with marketing gas produced from the lands covered." (*Id.* ¶ 10.) In addition, the Fullertons acquired and held eight royalty assignments related to this lease starting in 1990. (*Id.* ¶ 32 (Docs. 1-2–1-9).)

On December 1, 2004, Energen "acquired the Lessee's interests" and the "Lessee's interests in wells subject to the Fullertons' Overriding Royalty Assignments." (*Id.* ¶¶ 11–12, 33.) The wells also produced "residue gas" and "natural gas liquids" that "were sold under contracts of sale with third persons who purchased . . . at the tailgate of various processing plants." (*Id.* ¶ 14.) Plaintiffs argue that Energen "repeatedly breached its royalty payment obligations . . . by failing to pay the Plaintiffs royalties based upon the proceeds which were received on the sale of the residue gas and natural gas liquids at the tailgate of the processing plants." (*Id.*) Moreover, they allege that Energen "further underpaid its royalty payment obligations . . . by failing to pay the amount of royalties due and owing to the Fullertons on the proceeds received on the sale of condensate . . . ." (*Id.* ¶ 15.)

### b. Procedural History and Related Cases

The Fullertons were "previously . . . putative members of the class in certain class action cases filed against Energen." (*Id.* ¶ 38.) To avoid the six-year statute of limitations, they argue that the "limitations period was tolled for the claims of the Fullertons against Energen during the entire time that the class allegations in those previous class action cases were pending." (*Id.*)

On September 20, 2013, the Anderson Living Trust sued Energen for breaching the lease and royalty agreements pertaining to wells in New Mexico. The case is ongoing and on remand from the Tenth Circuit. *See Anderson Living Tr. v. Energen Res. Corp.*, 886 F.3d 826, 832 n.8 (10th Cir. 2018). On December 5, 2019, the Court certified a narrowed class in that matter limited to Colorado plaintiffs, excluding the Fullertons. *See Anderson Living Tr. v. Energen Res. Corp.*, No. 1:13-cv-00909-WJ-CG, Doc. 256 (D.N.M. Dec. 5, 2019). In a related case, a group of plaintiffs filed a class action against Energen on March 29, 2018, making the same royalty underpayment argument. *Ulibarri v. Energen Res. Corp.*, No. 1:18-cv-00294-RB-SCY (*Ulibarri*).

The Fullertons filed suit against Energen on April 15, 2019, alleging the following claims: breach of the lease agreement (Count I); breach of the overriding royalty assignments (Count II); and violation of the New Mexico Oil and Gas Proceeds Payment Act (NMOGPPA) (Count III). On June 14, 2019, Energen filed a Partial Motion to Dismiss (Doc. 9), and the Fullertons responded, while also filing a Cross-Motion for Partial Summary Judgment (Doc. 13).

## II. Legal Standards

Complaints require a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), but "*detailed* factual allegations" are not necessary. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added) (citation omitted). The district court must accept "well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff," *In re Gold Res. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (quotation marks and citation omitted), but it can also dismiss complaints for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6). These allegations must include "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation

omitted), which does not speak to the probability of any outcome. *Id.* at 678. Therefore, courts should dismiss complaints only when it is "obvious" that there is no way to prevail with the available facts. *See Brown v. Sherrod*, 284 F. App'x 542, 543 (10th Cir. 2008) (citation omitted).

## III. Discussion

The statute of limitations starts to run when an injury occurs or is discovered, but the Supreme has held that "[t]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe*, 414 U.S. at 554; *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 (1983) (reiterating the rule). The Supreme Court limited *American Pipe* the following year, holding that "the tolling effect given to the timely prior filings in *American Pipe* . . . depended heavily on the fact that those filings involved exactly the same cause of action subsequently asserted." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 467 (1975). Since then, circuit courts have attempted to explain what claims fall within the scope of *American Pipe* tolling. The Tenth Circuit, however, has not directly addressed this narrow issue. The Seventh Circuit has held that "identical legal theories must be involved in both cases," *In re Copper Antitrust Litig.*, 436 F.3d 782, 787 (7th Cir. 2006), while the Eighth Circuit has held that "tolling should be limited to claims filed in a later action that are the same as those pleaded in the putative class action," *Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 888 (8th Cir. 2015). And the Ninth Circuit does not require the claims to be "identical in every respect" to receive the benefits of tolling. *Tosti v. City of L.A.*, 754 F.2d 1485, 1489 (9th Cir. 1985).

Energen's Motion to Dismiss argues that the Fullertons' claims are "barred by the statute of limitations." (Doc. 9 at 1.) That is, "the Fullertons filed their action in April 2019, [so] state law bars any breach of contract claim based on royalties paid prior to April 2013." (*Id.*) Moreover,

4

"[t]he two putative class actions previously filed against Energen (neither of which has been certified under Fed. R. Civ. P. 23) either raise different claims than the ones asserted by the Fullertons in this case, or involve different royalty instruments than the ones at issue in this case." (*Id.* at 2.) In sum, Energen claims that the two related class actions rest upon different legal theories and thus the Fullertons do not benefit from tolling. In *Anderson*, the class was based on an implied duty of marketability. (*Id.* at 4.) And in *Ulibarri*, the class argument rests upon the express language of the leases, requiring payment of royalties on the 'proceeds' or 'gross proceeds' of production." (*Id.*) "To the extent *Ulibarri* has any bearing on the Fullertons' claims," Energen argues, "it merely tolls their claims arising under the Fullerton Lease for the two months prior to the Fullertons filing this action against Energen." (*Id.* at 8.)

The Fullertons assert, however, that the *Anderson* claims are "identical to the . . . Fullertons' royalty underpayment claims in this case." (Doc. 14 at 1.) In fact, the Fullertons were at one point part of the *Anderson* class. (*Id.*) The claims must be substantially similar and involve the same set of facts and issues. (*Id.* at 7.) In terms of timing, what matters is the language in the *Anderson* complaint, not the arguments made to the Tenth Circuit. (*Id.* at 9.) "The fact that the *Anderson* plaintiffs may have modified (at least to some extent) their legal arguments in support of their royalty underpayment claims after the original class complaint was filed is factually and legally irrelevant." (*Id.*) Given that the claims here are nearly identical to those in the original *Anderson* complaint, the Fullertons argue that they ought to be tolled.

The Court must first reconcile the precedent that is not perfectly consistent. To receive the benefit of tolling, the *Johnson* Court required causes of action that were "exactly the same." 421 U.S. at 467. Circuit courts, however, have not understood this to require identical language. The Seventh Circuit has held that the legal theories need to be "identical," *Copper Antitrust Litig.*, 436

F.3d at 787, while the Eighth Circuit requires the claims to be rooted in "the same factual information," *Zarecor*, 801 F.3d at 888. The Fullertons describe the standard as requiring *substantial similarity*, but the precedent suggests a stricter rule. Finding these Seventh and Eighth Circuit cases persuasive, this Court would require that for claims to receive tolling, they must: (a) assert the same cause of action originally filed in the class action complaint, and (b) arise from the same factual circumstances as the class action claims.

Considering these legal conclusions, the Court must now look to the Fullertons' claims as compared to the claims originally made in *Anderson*. The plaintiffs filed the first complaint in *Anderson* on September 20, 2013. (Doc. 14-1 (*Anderson* Compl.).) They alleged that Energen owned "certain oil and gas leases covering the Plaintiffs' mineral, royalty, and overriding royalty interests." (*Id.* ¶ 6.) These were "non-cost bearing" interests in the "revenues derived from the production and sale of hydrocarbons pursuant to the terms of oil and gas leases . . . ." (*Id.* ¶ 11.) "Energen owe[d] Plaintiffs a duty to pay royalties on all hydrocarbons, including drip condensate, produced from each of the Plaintiffs' wells . . . ." (*Id.* ¶ 13.) The first cause of action specifically stated that "[t]he *terms of the Leases* described . . . provide that Plaintiffs are entitled to the above stated fractional percentage of the revenue from the production, use, and sale of oil and gas and other hydrocarbons produced . . . ." (*Id.* ¶ 26 (emphasis added).) Likewise, the fifth cause of action alleged the same breach of royalty payments under the NMOGPPA. (*Id.* ¶¶ 56–61.)

In the present matter, the Fullertons claim that "Energen breached its obligations . . . under the [Lease Agreement] by failing to pay royalties based upon the proceeds received on the sale of residue gas, natural gas liquids, and condensate which came from gas wells subject to the [Lease Agreement]." (Compl. ¶ 40.) The Fullertons also allege related violations of the Overriding Royalty Agreements and the NMOGPPA. (*Id.* ¶¶ 43, 46.)

6

Obviously, both matters originated from the same set of facts: a group of individuals and entities had lease agreements with Energen to collect royalties on the gas produced from the wells, and the parties dispute whether the leaseholders are entitled to the proceeds from the residual products from the well. Energen attempts to differentiate the two cases, arguing that *Anderson* focused on the duty of marketability, while this case squarely turns on the specific lease language. The Court, however, finds that the Fullertons have the better argument. Energen is correct that the *Anderson* plaintiffs limited their arguments before the Tenth Circuit "solely to applicability of the marketable condition rule in New Mexico," *Anderson Living Tr.*, 886 F.3d at 832 n.8, but this reliance misunderstands *American Pipe* tolling. The content of the original complaint in *Anderson* dictates the issues that may toll, not arguments made on appeal. And in looking at the *Anderson* complaint, the plaintiffs make numerous references to the "terms of the lease," contrary to Energen's argument that *Anderson* exclusively addressed the duty of marketability. The complaints include much of the same content and make nearly identical allegations against Energen. The *Anderson* claims are every bit rooted in a breach of the specific lease and royalty language as the Fullertons'. Given the likeness, the Court will rule that the Fullertons' claims receive the benefit of *American Pipe* tolling and deny Energen's Motion to Dismiss (Doc. 9).

The original *Anderson* complaint was filed on September 20, 2013, and the *Anderson* class represented their interests until this present lawsuit. In the meantime, the *Anderson* class was recently certified but narrowed to only include the Colorado plaintiffs, so the Fullertons are no longer represented. Therefore, the tolling of the statute of limitations extends the Fullertons' claims for underpaid royalties back six years before the *Anderson* complaint was filed to September 20, 2007. Moreover, since the *Anderson* complaint tolls the statute of limitations for the Fullertons, it is unnecessary to discuss the more recently filed *Ulibarri* case.

In the Fullertons' Response to the Motion to Dismiss, however, they also move the Court to enter "partial summary judgment in favor of the Fullertons determining that the six year limitations period for the . . . royalty underpayment claims against Energen was tolled from September 20, 2013 until the Fullertons commenced this litigation on April 15, 2019." (Doc. 14 at 2.) Later, they specifically ask the Court to "grant partial summary judgment . . . and rule that the Fullertons may recover for all royalty underpayments made by Energens to them since September 20, 2007." (*Id.* at 10.) Beyond the tolling question, it is unclear from the briefing what precisely the Fullertons hoped to accomplish with their partial Motion for Summary Judgment, as Energen answers the tolling issue exclusively. As far as the Court can tell, Plaintiffs moved for summary judgment to include the *Anderson* complaint as an exhibit. The Court would remind the Fullertons that it was unnecessary to file a motion for summary judgment solely to introduce the *Anderson* complaint. The Fullertons could have asked the Court, in their response, to take judicial notice of the complaint, thereby conserving judicial resources and costs to the litigants.

**THEREFORE**,

**IT IS ORDERED** that the Energen's Partial Motion to Dismiss (Doc. 9) is **DENIED**.

**IT IS FURTHER ORDERED** that the Fullertons' Cross-Motion for Partial Summary Judgment (Doc. 13) is **DENIED AS MOOT**.

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**